IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
                                              :

*In re*                                      :              Chapter 7

BIONOL CLEARFIELD, LLC, *et al.*,[1]   :              Case No. 7- No. 11-12301 (PJW)

                                              :              (Joint Administration Requested)

Debtors.                         :

                                              :              **Related D.I. 33**
---------------------------------------------------------------x

## STIPULATION AND INTERIM ORDER (I) AUTHORIZING THE USE OF LENDERS' CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363 AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4901(b)

Upon the motion (the "Motion"), dated as of August 2, 2011, of the trustee (the "Trustee") appointed to serve in the Chapter 7 Cases (as defined below) of the above-captioned debtors (each a "Debtor" and collectively, the "Debtors"), (a) seeking this Court's authorization, pursuant to Section 363(c) of Title 11, United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), to use the Cash Collateral (as defined below) and, pursuant to Sections 361 and 363 of the Bankruptcy Code, to provide adequate protection to the Lenders (as defined below) with respect to any diminution in the value of the Lenders' interests in the Prepetition Collateral (as defined below), including for the use of the Cash Collateral, the use, sale, lease, depreciation, decline in market price or other diminution in value of the Prepetition Collateral other than the Cash Collateral, or the imposition of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code; (b) seeking an interim hearing (the "Interim Hearing") on the Motion to consider entry of an interim order pursuant to Bankruptcy Rule 4001(b) (this

---

[1] The Debtors in these cases are: Bionol Clearfield, LLC, Bionol Clearfield Holdco, LLC, and BioEnergy Holding, LLC.

"Interim Order") authorizing the Trustee to use the Lenders' Cash Collateral; (c) requesting that a final hearing (the "Final Hearing") be scheduled, and that notice procedures in respect of the Final Hearing be established by this Court to consider entry of a final order (the "Final Order") authorizing on a final basis the Trustee's use of the Cash Collateral; and due and sufficient notice of the Motion and the Interim Hearing under the circumstances having been given; and the Interim Hearing on the Motion having been held before this Court on August 9, 2011; and upon the entire record made by the Trustee at the Interim Hearing, and this Court having found good and sufficient cause appearing therefor,

**IT IS HEREBY STIPULATED AND AGREED BY AND AMONG THE TRUSTEE, THE AGENT AND THE LENDERS THAT:**

A.  On July 20, 2011 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Chapter 7 Cases"). The Chapter 7 Cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

B.  This Court has jurisdiction over these Chapter 7 Cases and the Motion pursuant to 28 U.S.C. § 157(b) and 1334. Consideration of this Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.  On July 27, 2011, the Trustee filed the Chapter 7 Trustee's Motion for Authority to Operate the Debtors' Business Pursuant to 11 U.S.C. § 721 (the "721 Motion"). In conjunction with the filing of the 721 Motion, the Trustee filed a motion seeking an expedited hearing on the 721 Motion, which was granted by the Court on July 28, 2011, and a hearing on the 721 Motion will be held on August 9, 2011, at 4:00 p.m.

D.  Pursuant to the Senior Credit Agreement, dated as of February 6, 2008 (together with all amendments, supplements and modifications, the "Credit Agreement"), among Bionol

2

Clearfield, LLC ("Bionol"), TD Bank, N.A., as administrative agent and as collateral agent (in such capacities, the "Agent"), and the lenders party from time to time thereto (the "Lenders"), the Lenders made credit available to Bionol. All amounts owing by the Debtors in connection with the Credit Agreement are hereinafter referred to as the "Prepetition Obligations". Furthermore, pursuant to the Assignment and Security Agreement; the Accounts Agreement; the Fee and Leasehold Mortgage, Security Agreement, Financing Statement, Fixture Filing and Assignment of Leases and Rents; and the Pledge and Security Agreement, as each of the foregoing has been amended, supplemented and otherwise modified to date (the "Security Documents"), the Prepetition Obligations are secured by liens and security interests upon and in substantially all of the assets and property of Bionol, including without limitation, accounts, chattel paper, real property, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, intellectual property, inventory, investment property and proceeds (collectively the "Prepetition Collateral").

E. All amounts on deposit in the Revenue Account, Construction Account, Working Capital Reserve Account, Operating Account and Debt Service Reserve Account maintained by the Agent or its affiliate constitute Prepetition Collateral or the proceeds of Prepetition Collateral and, therefore, is the cash collateral of the Lenders within the meaning of Section 363(a) of the Bankruptcy Code (the "Cash Collateral").

Based upon the foregoing stipulations, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**BASED ON THE RECORD MADE AT THE INTERIM HEARING, THE COURT HEREBY FINDS THAT:**

3

F.  Based on the record made at the Interim Hearing, good cause has been shown for the entry of this Interim Order. The Debtors' estates do not have any sources of working capital or financing to enable the Trustee to preserve the estates absent continued use of the Lenders' Cash Collateral.

G.  The Agent and the Trustee have negotiated at arms' length and in good faith regarding the Trustee's use of Cash Collateral to fund the administration of the Debtors' estates. The Agent, as authorized by Required Lenders (as defined in the Credit Agreement), has agreed to permit the Trustee to use the Cash Collateral for the period through the Termination Date (as defined below), all subject to the terms and conditions set forth herein, including the protection afforded a party acting in "good faith" pursuant to Section 363(m) of the Bankruptcy Code, but use of Cash Collateral shall only be in accordance with the budget attached hereto as Exhibit 1 (the "Budget"), subject to permitted variances of 10%.

H.  Notice of the Interim Hearing and the relief requested in the Motion has been provided, whether by U.S. mail, facsimile, electronic mail, overnight courier, or hand delivery, on August 4, 2011 to certain parties in interest, including: (i) the United States Trustee; (ii) the Internal Revenue Service; (iii) the creditors holding the 20 largest unsecured claims against the Debtors' estates; (iv) counsel to the Agent; (v) counsel to the individual Lenders to the extent known to the Trustee's counsel; and (vi) Debtors' counsel (collectively, the "Notice Parties"). Under the circumstances, notice of the Interim Hearing and the relief requested in the Motion is due and sufficient notice and complies with Section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), and 4001(d), and the Local Rules of the Bankruptcy Court for the District of Delaware.

4

093112-0006-14238-Active.12487944.13
PH1 2887013v2 08/08/11

08/08/2011 4:46 PM

I. Based on the record presented to the Court at the Interim Hearing, (i) the terms of the Trustee's use of the Lenders' Cash Collateral appear to be fair and reasonable, and to reflect the Trustee's exercise of prudent business judgment consistent with its fiduciary duties; and (ii) the Agent, as authorized by Required Lenders, has consented to the use of the Prepetition Collateral, including the Cash Collateral.

J. The Trustee has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The permission granted herein to use the Lenders' Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors' estates. This Court concludes that entry of this Interim Order is in the best interest of the Debtors' estates and creditors.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**:

1. The Motion is granted on an interim basis. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits or, to the extent applicable, deferred until the hearing on the Final Order. This Interim Order shall become effective immediately upon its entry.

2. The Trustee is hereby authorized and directed to use the Cash Collateral during the period from the Petition Date through and including the Termination Date (as defined in paragraph 10 hereof) in accordance with, and only in accordance with, the terms and conditions of this Interim Order and the Budget, subject to permitted variances of 10% contemplated herein. The Budget may be modified by the Trustee in writing only with the prior written consent of the Agent upon instructions from the Required Lenders.

3. The Trustee may transfer the Cash Collateral to, and maintain the Cash Collateral in, accounts maintained in the name of the Trustee at an institution satisfying the requirements of Section 345 of the Bankruptcy Code, provided that (i) the Agent's liens on the Cash Collateral shall continue in the Cash Collateral so transferred without further action on the Agent's part (and the Agent's liens shall survive, and be in effect after, the time period this Interim Order is in effect) and shall retain the same perfection and priority over the Cash Collateral as at the Petition Date and (ii) the Trustee's right to withdraw or expend Cash Collateral shall remain subject to this Order and shall not be expanded by reason of such transfer or re-naming. This Interim Order does not address the disposition of any Prepetition Collateral outside the ordinary course of business and does not authorize the Trustee's use of the Cash Collateral resulting therefrom.

4. Notwithstanding anything above or to the contrary in this Interim Order, if T.W. Phillips Pipeline Corporation draws upon the letter of credit issued by TD Bank, N.A. at the request of Bionol, pursuant to the Letter Of Credit And Reimbursement Agreement and the Cash Collateral Agreement, both dated August 3, 2010, then TD Bank, N.A. is authorized without notice or further act to reimburse itself from the cash collateral it holds for its own account, not as Agent for the Lenders, in account number 8247602845 at TD Bank, N.A., which shall remain at TD Bank, N.A. and not be transferred to the Trustee except to the extent that the letter of credit has been surrendered undrawn to TD Bank, N.A. or to the extent of any balance remaining in the account after the letter of credit has been drawn and reimbursed and, if so transferred to the Trustee while this Interim Order is in effect, such cash collateral shall not become "Cash Collateral" by virtue of such transfer or be governed by this Interim Order.

5. (a) As adequate protection for, and to the extent of, any diminution in the

value of the Lenders' interest in the Prepetition Collateral resulting from (x) the use of the Cash Collateral pursuant to Section 363(c) of the Bankruptcy Code, (y) the use, sale, lease, depreciation, decline in market price or other diminution in value of the Prepetition Collateral (other than the Cash Collateral) pursuant to Section 363(c) of the Bankruptcy Code and (z) the imposition of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code (the amount of any such diminution being referred to hereinafter as the "Adequate Protection Obligations"):

>   (i) the Agent and the Lenders are hereby granted (effective as of the Petition Date and without the necessity of the execution of mortgages, security agreements, control agreements, pledge agreements, financing statements or otherwise), valid and perfected, replacement security interests in, and liens (the "Replacement Liens") on all of the right, title and interest of the Debtors' estates in, to and under all present and after-acquired property of the Debtors' estates of any nature whatsoever except with respect to claims and causes of action under Section 547 of the Bankruptcy Code, including, without limitation, all cash contained in any account of the Debtors' estates, and all rights, claims and other causes of action of the Debtors' estates except for claims and causes of action under Section 547 of the Bankruptcy Code. Subject to the Carveout, said Replacement Liens shall be (x) a first priority perfected lien upon all of the Postpetition Collateral that is not otherwise encumbered by a validly perfected, enforceable, non-avoidable security interest or lien on the Petition Date, (y) a first priority, senior, priming and perfected lien upon (a) that portion of the Postpetition Collateral that is comprised of the Prepetition Collateral and (b) Postpetition Collateral subject to a lien that is junior to the liens securing the Prepetition Obligations and (z) a second priority, junior perfected lien upon all Postpetition Collateral (other than the portion described in the preceding clause (y)), which is subject to a validly perfected and enforceable lien as of the Petition Date; and
>
>   (ii) the Trustee is authorized and directed to (a) immediately pay as adequate protection an amount equal to all accrued and unpaid costs, fees and expenses of the Agent outstanding as of the date hereof (including, without limitation, reasonable fees and expenses of counsel and financial advisors to the Agent) and (b) pay on demand all costs, fees and expenses of the Agent after the date hereof (including, without limitation, reasonable fees and expenses of counsel and financial advisors to the Agent). Costs, fees and expenses described in (a) and (b) above may relate to, without limitation, the Credit Agreement, the Prepetition Obligations, the monitoring of these Chapter 7 Cases or the enforcement and protection of the rights and interests of the Agent and the Lenders in these Chapter 7 Cases.

The payments provided for in paragraph 5(a)(ii) are referred to herein as the "Adequate Protection Payments".

(b) As further adequate protection hereunder, the Trustee shall provide the following reporting to the Agent (the "Reporting Requirements"):

(i) the Trustee shall provide the Agent with copies of all financial reports, information and other materials required to be delivered to the Agent pursuant to the Credit Agreement and any other information and materials as may be, from time to time, reasonably requested by the Agent;

(ii) commencing on Wednesday, August 17, 2011 and on every Wednesday thereafter, 13-week rolling cash flow projections in the same form as the Budget;

(iii) commencing on Wednesday, August 17, 2011 and on every Wednesday thereafter, a weekly statement showing (A) the ending cash balance on a consolidated basis for the prior week-ending Sunday for the Debtors and (B) the revenue on a consolidated basis for the prior week-ending Sunday; and

(iv) within 10 days of the fiscal month ending August 31, 2011, and within 10 days of the end of every fiscal month thereafter, consolidated financial statements for the Debtors as of the end of the preceding month and year-to-date period, including a statement showing line item variances for such preceding month and year-to-date period as reflected in the Budget and line item variances for such month and year-to-date period, and an explanation of any material variances.

The Trustee shall permit representatives, agents and/or employees of the Agent or the Lenders to have reasonable access to the premises and non-privileged records of the Debtors' estates and shall cooperate, consult with and provide to such persons all such non-privileged information as they may reasonably request from time to time. At its discretion, the Agent may request, and the Trustee agrees to provide, periodic electronic and telephonic updates to the

Agent and the Lenders concerning the operations, business affairs and financial condition of the Debtors. None of the fees, costs and expenses payable pursuant to paragraph 5(a) of this Interim Order shall be subject to separate approval by this Court (but the Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.

As this Interim Order is entered upon consent, no finding or conclusion is contained herein as to whether or not the Adequate Protection Obligations and Reporting Requirements are sufficient to adequately protect the Agent and the Lenders for any period of time, including the time period during which this Interim Order is in effect. Notwithstanding any other provision hereof, the grant of adequate protection to the Agent and the Lenders pursuant hereto is without prejudice to the rights of the Agent and the Lenders, including the rights to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection and the rights to seek relief from the automatic stay on any grounds, and also without prejudice to the right of the Trustee or any other party in interest to contest any such relief.

6. As used in this Interim Order, the term "Carveout" means (a) the unpaid fees of Trustee, the clerk of the Bankruptcy Court and of the United States Trustee pursuant to 28 U.S.C. § 1930(a) (the "Statutory Fees") and (b) following the occurrence of an Event of Default (defined below), the payment of up to $100,000 of allowed professional fees, costs and expenses incurred by the professionals retained by the Trustee provided that such fees, costs and expenses shall not be incurred with respect to prosecuting any claims or causes of action under Section 547 of the Bankruptcy Code, excluding (i) any professional fees, costs and expenses incurred by a financial advisor or investment bank retained by the Trustee and (ii) any fees, costs and expenses incurred in connection with proceedings or actions against Getty Petroleum Marketing

9

Inc., Lukoil Americas Corporation or any of their successors or affiliates. So long as no Event of Default shall have occurred and be continuing, the Trustee shall be permitted to pay without reduction of the Carveout but subject to the Budget (x) the Statutory Fees and (y) up to $100,000 of allowed professional fees, costs and expenses incurred by the professionals retained by the Trustee provided that such fees, costs and expenses shall not be incurred with respect to prosecuting any claims or causes of action under Section 547 of the Bankruptcy Code, as the same may be due and payable. Nothing herein shall be construed as a waiver of the right of the Agent or any Lender to object to the allowance of any professional fees, costs and expenses incurred by the professionals retained by the Trustee. For the avoidance of doubt, the Agent's liens in the Prepetition Collateral shall survive, and be in effect, during and after the time period this Interim Order is in effect but shall be subject to the Carveout.

7. Notwithstanding the foregoing, in no event shall the Cash Collateral or the Carveout be used for the payment or reimbursement of any fees, expenses, costs, or disbursements of any of the professionals incurred in connection with the assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense, or contested matter, the purpose of which is to seek any order, judgment, determination, or similar relief (a) disputing, disallowing, invalidating, setting aside, avoiding, bifurcating or subordinating in whole or in part the Prepetition Obligations or the Agent's liens and security interests granted pursuant to the Credit Agreement, Security Documents or this Interim Order; (b) seeking to surcharge the Prepetition or Postpetition Collateral; (c) opposing any motion by the Agent and the Lenders for relief from the automatic stay; (d) asserting any other claim or cause of action against the Agent or any of the Lenders seeking any affirmative relief, including but not limited to damages or equitable relief, or (e) preventing, hindering or delaying, whether

10

directly or indirectly, the Agent's enforcement or realization upon any Prepetition Collateral or Postpetition Collateral.

8.  Subject to the Carveout, the Adequate Protection Obligations shall constitute expenses of administration under Sections 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code (the "<u>507(b) Claims</u>") with priority in payment over any and all administrative expenses now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code including, without limitation, Sections 105, 326, 328, 330, 331 and 726 of the Bankruptcy Code, other than the allowed fees and expenses of the Trustee's duly retained professionals (but only up to the extent provided for in the Budget) excluding any such fees and expenses incurred with respect to prosecuting claims or causes of action under Section 547 of the Bankruptcy Code, and shall at all times be senior to the rights of any creditor in these Chapter 7 Cases; provided that no proceeds with respect to claims and causes of action under Section 547 of the Bankruptcy Code shall be applied to the Adequate Protection Obligations. Subject to the Carveout, no cost or expense, now existing or after arising, of administration under Sections 105, 503(b) or 507(b) or otherwise, shall be senior to, or *pari passu* with, the 507(b) Claims of the Lenders arising out of the Adequate Protection Obligations.

9.  Except as expressly set forth in this Interim Order, the liens granted pursuant to this Interim Order shall not be (i) subject to any lien that is avoided and preserved for the benefit of the Debtors' estates under Section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien under Sections 363 and 364 of the Bankruptcy Code. Subject to the Carveout, the Replacement Liens shall be prior and senior to all liens and encumbrances of all other secured creditors in and to such Postpetition Collateral granted, or arising, after the Petition Date (including, without limitation, liens and security interests, if any, granted in favor

11

of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors). The Replacement Liens granted pursuant to this Interim Order shall constitute valid, enforceable and duly perfected security interests and liens, and the Agent and the Lenders shall not be required to file or serve mortgages, financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Trustee to execute any documentation relating to the Replacement Liens shall in no way affect the validity, enforceability, perfection or priority of such Replacement Liens. If, however, the Agent, in its sole discretion, shall determine to file any such financing mortgages, statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Replacement Liens, the Trustee is directed to cooperate with and assist in such process, the stay imposed by Section 362(a) of the Bankruptcy Code is hereby lifted to allow the filing and recording of a certified copy of this Interim Order or any such mortgages, financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded at the time of and on the date of this Interim Order.

10. The Agent's consent to the use of Cash Collateral pursuant to this Interim Order shall terminate (the date of any such termination, the "Termination Date") on the earliest to occur of (x) August 31, 2011 if the Final Order has not been entered by the Court on or before such date, or such later date as the Agent, upon instruction of the Required Lenders, may agree, (y) the first business day after the dismissal of the Chapter 7 Cases or (z) five business days following written notice to the Trustee after the occurrence and continuance of any of the following events ("Events of Default") beyond any applicable grace period:

12

a. Failure of the Trustee to make a payment to the Agent as and when required by this Interim Order or other failure to comply in any material respect with the terms of this Interim Order and such failure shall continue unremedied for more than two business days after notice thereof;

b. Failure of the Trustee to comply with the Reporting Requirements if not remedied within five business days after notice thereof of any applicable deadline;

c. Failure of the Trustee to comply with any other covenant or agreement specified in this Interim Order (other than those described in clauses (a) and (b) above) and such failure shall continue unremedied for more than five business days after notice thereof;

d. The filing of a motion for a sale of any assets of the Debtors' estates outside the ordinary course of business without the prior written consent of the Agent;

e. The filing of a motion for settlement and compromise of any of the estates' claims against Getty Petroleum Marketing, Inc., Lukoil Americas Corporation or any of their successors or affiliates without the prior written consent of the Agent;

f. The Trustee shall fail to meet any of the payroll, payroll tax, utility, or ad valorem tax obligations specified in the Budget as and when due;

g. The Trustee shall fail to maintain the Plant (as defined in the Credit Agreement) in a "hot idle" state;

h. An event that causes all or substantially all of the Plant to be damaged, destroyed or rendered unfit for normal use occurs;

i. The Trustee petitions the Bankruptcy Court to obtain additional financing *pari passu* or senior to the liens secured by the Agent or Lenders without the prior written consent of the Agent.

j. The Bankruptcy Court shall enter an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any material assets of the Debtors' estates;

k. An order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order without the consent of the Agent;

l. The Trustee shall, without prior written consent of the Agent, create, incur or suffer to exist any postpetition liens or security interests in the Debtors' estates other than (i) those in favor of the Agent, (ii) carriers', warehousemen's, repairmen's or other similar liens, (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security

13

legislation, (iv) liens arising by operation of law and having a priority by operation of law over the Agent's liens on the Prepetition Collateral or (iv) deposits to secure the payment of postpetition utilities, statutory obligations, surety and appeal bonds, performance bonds and other obligations of a like nature incurred in the ordinary course of business;

m.  A claim arising from funded indebtedness shall be granted in any of these Chapter 7 Cases which is *pari passu* with or senior to the 507(b) Claims of the Agent and the Lenders, except for claims of the type described in the preceding paragraph (l); and

l.  Any judgment in excess of $100,000 as to any postpetition obligation not covered by insurance shall be rendered against the Debtors' estates and the enforcement thereof shall not be stayed; or there shall be rendered against the Debtors' estates a non-monetary judgment with respect to a post-petition event which causes or could reasonably be expected to result in a material adverse change or have a material adverse effect on the ability of the Trustee to perform its obligations under this Interim Order.

The Trustee shall promptly provide notice to the Agent (with a copy to the United States Trustee) of the occurrence of any Event of Default.

11. Following notice by the Agent of an Event of Default and prior to a Termination Date, the Trustee or any other party of interest, shall be entitled to seek an emergency hearing to be held within such five day period regarding, among other things, the continued use of Cash Collateral. Unless the Court enters an order authorizing the Trustee to continue its use of Cash Collateral at such hearing, the Termination Date shall occur. Upon the Termination Date, the Agent and the Lenders may exercise the rights and remedies available under the Credit Agreement, Security Documents, this Interim Order or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Postpetition Collateral. The automatic stay under Section 362 of the Bankruptcy Code is hereby deemed modified and vacated to the extent necessary to permit such actions. The actions described above may be taken without further order of or application to the Court as the Agent or

14

the Lenders shall, in their discretion, elect. The Agent and the Lenders shall be entitled to apply the payments or proceeds of the Prepetition Collateral in accordance with the provisions of the Credit Agreement. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Agent and the Lenders under this Interim Order shall survive the Termination Date.

12. Without the prior written consent of the Agent, the Trustee shall not grant (or seek authority from the Court to grant) liens in the Prepetition Collateral, the Postpetition Collateral or any portion thereof to any other parties pursuant to Section 364 of the Bankruptcy Code, which liens are senior or on parity with the liens of the Agent or the Lenders.

13. As the Budget provides sufficient Cash Collateral to cover the cost of preserving the Debtors' estates during the period of this Interim Order, the Trustee shall not (or seek authority from the Court to) surcharge the Prepetition or Postpetition Collateral to recover the costs and expenses of preserving or disposing of the Prepetition or Postpetition Collateral prior to the Termination Date under Section 506(c) of the Bankruptcy Code.

14. If an order dismissing these Chapter 7 Cases under the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the Replacement Liens granted pursuant to this Interim Order to the Agent and the Lenders shall continue in full force and effect, shall remain binding on all parties in interest notwithstanding such dismissal until the obligations secured thereby shall have been paid and satisfied in full and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the limited purposes of enforcing such Replacement Liens.

15. Entry of this Interim Order shall be without prejudice to any and all rights, remedies, claims and causes of action which the Agent or the Lenders may have against the

Debtors' estates or third parties, and without prejudice to the right of the Agent and the Lenders to seek relief from the automatic stay in effect pursuant to Bankruptcy Code Section 362, or any other relief in these Chapter 7 Cases, and the right of the Trustee to oppose any such relief. The provisions of this Interim Order shall be binding upon and inure to the benefit of the Agent, the Lenders, the Trustee, the Debtors, the Debtors' estates and the Notice Parties and their respective successors and assigns.

16. Pursuant to Sections 105, 361 and 363 of the Bankruptcy Code, the Agent and the Lenders are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Interim Order, and each is entitled to the protection provided to such entities under Section 363(m) of the Bankruptcy Code.

17. The notice given by the Trustee of the Interim Hearing was given in accordance with Bankruptcy Rule 4001(c)(2). The Final Hearing to consider entry of the Final Order shall be held on _Aug 25_, 2011 at _2:00_ p.m. **AT** (Prevailing Eastern Time). Within three business days after this Court's entry of this Interim Order, the Trustee shall mail copies of this Interim Order and notice of the Final Hearing to the Notice Parties. Any party-in-interest objecting to the relief sought in the Motion being granted on a final basis shall submit any such objection in writing and file the same with this Court (with a courtesy copy to chambers) and serve (so as to be received) such objection no later than _Aug. 22_, 2011 at 4:00 p.m. **(Prevailing Eastern Time)** on the following:

(i) **Fox Rothschild LLP**, 2000 Market St., 10th Floor, Philadelphia, Pennsylvania 19103 (Attn: Michael G. Menkowitz, Esq.), proposed counsel to the Trustee;

(ii) **Simpson Thacher & Bartlett LLP**, 425 Lexington Avenue, New York, New York 10017, (Attn: Mark J. Thompson, Esq. and Jay D. Rao, Esq.), and **Pepper Hamilton LLP**,

16

1313 N. Market Street, Wilmington, Delaware 19801 (Attn: David B. Stratton, Esq.), counsel to the Agent; and

(iii) **Office of the United States Trustee for Region 3**, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David M. Klauder).

18. Notwithstanding the possible applicability of Rules 6004(g), 7062, and 9014 of the Bankruptcy Rules, or otherwise, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

19. The court retains jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

17

093112-0006-14238-Active.12487944.13
PH1 2887013v2 08/08/11

08/08/2011 4:46 PM

Stipulated and Agreed to on the record at the hearing held on August 9, 2011:

_____
The Honorable Peter J. Walsh
United States Bankruptcy Judge

_____
David B. Stratton ( Bar No. 960)
Pepper Hamilton LLP as
Counsel to TD Bank, N.A., as Agent


_____
Sheldon K. Rennie
Fox Rothschild LLP as
Counsel to the Trustee

Stipulated and Agreed to on the record at the hearing held on August 9, 2011:

_____
The Honorable Peter J. Walsh
United States Bankruptcy Judge


_____
David B. Stratton
Pepper Hamilton LLP as
Counsel to TD Bank, N.A., as Agent


_____
Sheldon K. Rennie
Fox Rothschild LLP as
Counsel to the Trustee

093112-0006-14238-Active.12487944.13
PH1 2887013v2 08/08/11

08/08/2011 2:05 PM